UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X

Alexander Mikhlin, Boris Tulman, GBA
International Holding Group, Inc.,
Nash Trucking, Inc., Borax Paper, Inc.,          08-CV-1302 (CPS)

                    Plaintiffs,

                                                 MEMORANDUM
          -against-                              OPINION AND
                                                 ORDER

HSBC, Priscilla Frey, Gennario DiNatale
a/k/a Gerald DiNatale a/k/a Gennaro
Dinatale, Fortunato DiNatale, Alabama
Realty partners, LLC, Silver Pasta,
LLC, Gold Pasta, LLC,

                    Defendants.

---------------------------------------X

SIFTON, Senior Judge.

     Alexander Mikhlin, Boris Tulman, GBA International Holding

Group, Inc. ("GBA"), Nash Trucking, Inc., and Borax Paper, Inc.

("plaintiffs") commenced this action against defendants HSBC,

Patricia Frey,[1] Gennario DiNatale a/k/a Gerard DiNatale a/k/a

Gennaro DiNatale, Fortunato DiNatale, Alabama Realty Partners,

LLC, Silver Pasta, LLC, and Gold Pasta, LLC on March 31, 2008.[2]

Plaintiffs assert claims under the Civil Racketeering Influenced

and Corrupt Organizations Act ("RICO"). *See* 18 U.S.C. §§ 1961 *et*

*seq*. Specifically, plaintiffs allege violations of 18 U.S.C. §

----

[1] Defendant HSBC notes that it has been improperly sued as the proper
legal entity is not HSBC but HSBC Bank USA, N.A. Defendant Frey also asserts
that she has been improperly sued, as her legal name is Priscilla Frey-
Incorvaia. Neither HSBC nor Frey, however, argue that the caption should be
amended or for any other remedy on this ground.

[2] I refer to defendants HSBC and Frey collectively as the HSBC
defendants and the remainder of the defendants as the DiNatale defendants.

1962(b)-(d), which is quoted in full below.  Now before this
Court are the HSBC defendants' and the DiNatale defendants'
motions to dismiss.  For the reasons set forth below, the motions
are granted.

**BACKGROUND**

The following facts are taken from plaintiff's complaint in
this action and the parties' papers submitted in connection with
this motion.  The facts alleged in the Complaint are presumed to
be true for the purposes of the 12(b)(6) motion to dismiss.

Plaintiffs allege that each plaintiff is either a producer
of fresh pasta, a supplier of packaging materials for the pasta
products, or a shipper of the pasta products.  Compl. ¶ 1.[3]  Non-
party Canada Bread purchased pasta products from GBA and
submitted purchase orders to plaintiffs[4] on a weekly basis.  *Id.*
Canada Bread wired payment for its orders directly into the

---

[3] Plaintiffs' Complaint does not set forth the relationship of the
plaintiffs or explain what role each individual or entity had in the making or
shipping of pasta products.  Plaintiffs do provide some of the otherwise
missing information in their opposition to defendants' motions to dismiss.
According to plaintiffs' opposition, plaintiffs Alexander Mikhlin and Boris
Tulman were, during the relevant time period, 75% shareholders of GBA, which
is a New York based corporation that produces pasta.  Pls.' Opp. at 1.
Plaintiff Nash Trucking shipped GBA's pasta to customers.  *Id.*  Plaintiff
Borax Paper, Inc., provided packaging materials for GBA's products.  *Id.*

[4] Presumably the orders were submitted to GBA, which actually produced
the pasta, rather than to all plaintiffs, and GBA then ordered the necessary
packing supplies from Borax and contracts for shipping with Nash Trucking.
The Complaint, however, does not differentiate among the parties, frequently
lumping all plaintiffs or all defendants together, which, in part, gives rise
to some of the issues discussed below.

business operating account of plaintiff GBA. *Id*. GBA's

operating account was held at a branch of HSBC in Brooklyn, New

York, managed by defendant Priscilla Frey. *Id*. at ¶ 3.

In September 2006, defendant Fortunato DiNatale[5] opened a

second operating account for GBA, with the assistance of

defendant Frey, who "permitted, authorized, cooperated, concealed

and/or fraudulently permitted" him to do so "so as to defraud,

induce, convert, and intercept monies wired by Canada Bread..."[6]

*Id*. Fortunata DiNatale was listed as the sole signatory on the

second operating account, although he had no involvement as an

official or shareholder in GBA. *Id*. ¶ 5. This second account

was concealed from plaintiffs. *Id*. ¶¶ 2,3.

Defendants then sent correspondence to Canada Bread

directing it to wire payments into the second operating account,

which Canada Bread did. *Id*. ¶ 4. Defendants had total control

over the deposits in the second operating account and virtually

all the wired deposits were funneled to Fortunato DiNatale,

Gennario DiNatala, Alabama Realty, Silver Pasta or Gold Pasta.[7]

Canada Bread's payments, totaling approximately $880,000, were

---

[5] Fortunato's son, Gennario DiNatalae, had, during the relevant time period, a twenty-five percent interest in GBA. Compl. ¶ 3. No other relationship between Fortunato and GBA is alleged.

[6] The Complaint alleges that defendant Frey acted in concert with the DiNatales to curry their favor since her husband worked in one of the DiNatales' restaurants in Hoboken, New Jersey. Compl. ¶ 3.

[7] The Complaint does not provide any information concerning these entities beyond allegations that they are all New York corporations and that Fortunato DiNatale owns Silver Pasta and Gold Pasta. Compl. ¶¶ 14-15.

- 4 -

deposited into this account from September 2006 through March
2007. *Id.* ¶ 5.


**DISCUSSION**[8]

In considering a motion pursuant to Rule 12(b)(6), a court
should construe the complaint liberally, "drawing all reasonable
inferences in the plaintiff's favor," *Chambers v. Time Warner,
Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citing *Gregory v. Daly*,
243 F.3d 687, 691 (2d Cir. 2001)), although "mere conclusions of
law or unwarranted deductions" need not be accepted. *First
Nationwide Bank v. Helt Funding Corp.*, 27 F.3d 763, 771 (2d Cir.
1994). Indeed, conclusory allegations "will not suffice to
prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension
Plan*, 291 F.3d 236, 240 (2d Cir. 2002). On a motion to dismiss,
"[t]he issue is not whether a plaintiff will ultimately prevail
but whether the claimant is entitled to offer evidence to support
the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375,
378 (2d Cir. 1995).

Nevertheless, to survive a 12(b)(6) motion to dismiss, the
allegations in the complaint must meet the standard of
"plausibility." *See Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955,

---

[8] This Court has jurisdiction as plaintiffs claim violations of 18
U.S.C. § 1962. I note, however, that, although plaintiffs also allege
diversity jurisdiction, the complaint states that each party is a citizen of,
or has its principal place of business in, New York. Accordingly, the Court
does not have diversity jurisdiction under 28 U.S.C. § 1332(a)(1).

- 5 -

1970 (2007).  Although the complaint need not provide "detailed factual allegations," *id*. at 1964; *see also ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 n. 2 (2d Cir. 2007)(applying the standard of plausibility outside *Twombly*'s anti-trust context), it must "amplify a claim with some factual allegations . . . to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-158 (2d Cir. 2007) (emphasis in original) (holding that the plaintiff's complaint adequately alleged the personal involvement of the Attorney General because it was plausible that officials of the Department of Justice would be aware of policies concerning individuals arrested after 9/11).  The test is no longer whether there is "no set of facts" that plaintiff could prove "which would entitle him to relief." *Bell Atlantic*, 127 S.Ct. at 1969 (quoting *Conley v. Gibson*, 355 U.S. 45-46 (1957)) ("[t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard").  Rather, the complaint must provide "the grounds upon which [the plaintiff's] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Commc'ns*, 493 F.3d at 98 (quoting *Bell Atlantic*, 127 S.Ct. at 1965).

The relevant provisions of RICO provide that:

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or
associated with any enterprise engaged in, or the
activities of which affect, interstate or foreign
commerce, to conduct or participate, directly or
indirectly, in the conduct of such enterprise's affairs
through a pattern of racketeering activity or
collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to
violate any of the provisions of subsection (a), (b),
or (c) of this section.

18 U.S.C. § 1962(b)-(d).


I. First and Second Causes of Action

There are seven elements to a RICO claim brought under the
subsections (b) and (c) of Section 1962: "(1) that the defendant
(2) through the commission of two or more acts (3) constituting a
'pattern' (4) of 'racketeering activity' (5) maintains an
interest in or participates in (6) an 'enterprise' (7) the
activities of which affect interstate or foreign commerce." *Moss
v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983).
Additionally, in order to have standing to pursue a civil claim
for a RICO violation, the plaintiff must allege that he has been
injured thereby. *See id.;* 18 U.S.C. § 1964(c).[9]

---

[9] In addition, of course, the enterprise must be engaged in, or the
activities of the enterprise must affect, interstate or foreign commerce. 18
U.S.C. § 1962. While RICO plaintiffs may satisfy this element by showing only
"a minimal effect on interstate commerce," *De Falco v. Bernas*, 244 F.3d 286,
309 (2d Cir. 2001); *see also United States v. Barton*, 647 F.2d 224, 233 (2d
Cir. 1981) (noting that the "impact" on interstate commerce "need not be
great"), there are no allegations in the Complaint that permit an inference of
even a minimal effect. All of the parties are located in New York, according
to the Complaint. Although Canada Bread's name gives a clue to its principal
place of business, plaintiffs fail to specify this information.

The terms enterprise, racketeering activity, and pattern as used above are terms of art.  An "enterprise" is a legal entity or association in fact.  18 U.S.C. § 1961(4).  "Racketeering activity" includes any act indictable under a variety of state and federal criminal statutes including the mail fraud statute, 18 U.S.C. § 1341, and the wire fraud statute, 18 U.S.C. § 1343. *See* 18 U.S.C. § 1961(1).[10]  A "pattern" requires at least two acts of racketeering activity, one of which occurred after the effective date of the RICO statute and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.  18 U.S.C. § 1961(5).

**A.  Enterprise**

Under § 1962(c), the term enterprise "connotes generally the vehicle through which the unlawful pattern of racketeering activity is committed, rather than the victim of that activity." *National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, 259, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994).  "The 'enterprise' is

---

[10]  "Ordinary theft offenses and conspiracies to commit them are not among the predicate activities defined in 18 U.S.C. § 1961(1)." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008). Accordingly, to the extent plaintiffs use terms "induced, intercepted, defrauded, converted, and fraudulently obtained," "fleece, defraud, steal, and intercept," or "grand larceny" in their Complaint, *see* Compl. ¶¶ 2,4, these conclusory allegations cannot be the basis for a pattern of racketeering activity.  I therefore examine only the allegations that appear to allege mail or wire fraud.

not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages. *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). The existence of an enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id*.

Plaintiffs' allegations of an enterprise are conclusory. The Complaint refers only to "an enterprise consisting of the individual Defendants," Compl. ¶ 3, "[t]he arrangement between the Defendants's [sic]", *id*. ¶ 5, and mere use of the term in allegations repeating the language in the RICO statute. *See id*. ¶ 17 ("all Defendants did acquire and/or maintain, directly or indirectly, an interest in or control of a RICO enterprise of individuals who were associated in fact); *see also id*. ¶¶ 23-24. These allegations do not plead a formal or informal association.

Moreover, the enterprise must be separate from the pattern of racketeering activity. *Turkette*, *supra*; *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004). "If the sole purpose of the alleged enterprise is to perpetuate the alleged fraud, there can be no enterprise for RICO purposes." *Atkins v. Apollo Real Estate Advisors, L.P.*, 2008 WL 1926684, at *15 (E.D.N.Y. Apr. 30, 2008) (citing *Goldfine v. Sichenzia*, 118 F. Supp.2d 392, 401 (S.D.N.Y. 2000)); *see also Gristede's Foods,*

*Inc. v. Unkechauge Nation*, 532 F. Supp.2d 439, 447 (E.D.N.Y. 2007) ("To state a claim under Section 1962(b), a plaintiff must allege that he suffered an injury resulting from the defendant's acquisition or maintenance of its interest [in an enterprise], as distinct from an injury caused by the predicate acts alone") (citations and internal quotation marks omitted); *First Capital Asset Mgmt., Inc.*, 385 F.3d at 174 (no enterprise where plaintiffs failed "to detail any *course* of fraudulent or illegal conduct separate and distinct from the alleged predicate racketeering acts themselves") (emphasis in original).

Plaintiffs make no allegations of an enterprise separate and apart from the alleged fraud. Rather, they allege that defendants "induced, intercepted, defrauded, converted and fraudulently obtained" funds from Canada Bread; used "fraudulent" protocol to open the second operating account; "wired fraudulent instructions" to Canada Bread; and sent "fraudulent correspondence" to Canada Bread. Compl. ¶¶ 2-4. Accordingly, plaintiffs have failed to allege an enterprise. Plaintiffs' argument that defendants' purpose was to defraud plaintiffs of monies through a fraudulent account and fraudulent papers, Pls.' Opp. at 17, further reinforces this conclusion.[11]

---

[11] Plaintiffs' quotation from *United States v. Rastelli*, 870 F.2d 822, 828 (2d Cir. 1989), refers to the knowledge of a RICO enterprise required to sustain a RICO conspiracy conviction and has no relevance to the question of whether an enterprise existed.

**B.  Maintenance or Participation in an Enterprise**

*1.  § 1962(b)*

To state a claim under § 1962(b), plaintiffs must allege that defendants acquired or maintained, through a pattern of racketeering activity or through the collection of an unlawful debt, interest or control of any enterprise.[12] *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1062-63 (2d Cir. 1996), *vacated on other grounds*, 525 U.S. 118 (1998).  There are no such allegations in plaintiffs' Complaint.  The allegations concerning Alabama Realty, Quality Silver Pasta, and Gold Pasta only detail these entities' places of principal business and, in the case of the two pasta companies, their ownership by Fortunato DiNatale, but do not indicate how they were acquired or financed. Plaintiffs' allegation that funds from the second operating account were funneled into unspecified personal interests of Fortunato DiNatale does not satisfy this requirement.

Further, under § 1962(b), plaintiffs must allege an injury stemming from the maintenance or acquisition of an interest in or control of an enterprise.  *NYNEX Corp.*, 93 F.3d at 1062-63.  The only injury alleged by plaintiffs is the diversion of funds into the second operating account.

---

[12]  Under § 1962(b), in contrast to § 1962(c), "[t]he 'enterprise' referred to . . . is . . .  something acquired through the use of illegal activities or by money obtained from illegal activities."  *National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, 259 (1994).

*2.  § 1962(c)*

Not only have plaintiffs failed to allege an enterprise under § 1962(c), but they have also failed to demonstrate that defendants conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.  18 U.S.C. § 1962(c).

The Supreme Court has held that "to conduct or participate, directly or indirectly, in the conduct of [a racketeering] enterprise's affairs [under § 1962(c)] one must participate in the operation or management of the enterprise itself."  *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).  The Supreme Court further explained that the term 'conduct' in the first part of the statute "require[s] some degree of direction" and that the term participate requires a defendant to "have some part in directing... [the] affairs" of the enterprise.  *Id*. at 179.

Plaintiffs allege no facts from which I can infer that any defendants meet this requirement.  There is not a single allegation specific to any defendant as to the direction of the affairs of the enterprise nor any allegations concerning such matters generally.  The sole allegation that defendant Fortunato DiNatale opened the second operating account at HSBC does not

rise to the level of "some degree of direction."[13]

Moreover, no allegation can be read to state that defendants Frey or HSBC had the requisite level of control as, at most, the Complaint alleges that Frey fraudulently "permitted, authorized, cooperated, concealed, and/or fraudulently permitted" Fortunato to open the account. Compl. ¶ 3. *See Dep't of Econ. Dev. v. Arthur Andersen & Co.*, 924 F. Supp. 339, 467 (S.D.N.Y. 1996) (providing banking services to enterprise "was one step removed from management of the RICO enterprise itself, and thus liability will not lie under § 1962(c)") (quoting *De Wit v. Firstar Corp.*, 879 F. Supp. 974 965 (N.D. Iowa 1995)).

**C. Pattern of Racketeering Activity**

Under any prong of § 1962, a plaintiff in a civil RICO suit must establish a 'pattern of racketeering activity,'" *GICC Capital Corp. v. Tech. Fin. Grp.*, 67 F.3d 463, 465 (2d Cir. 1995), which is defined above. In addition to the above deficiencies, plaintiffs have failed to allege a pattern of racketeering activity.

*1. Predicate Acts*

---

[13] Plaintiffs in opposition argue that "father and son, as Defendants, criminally stole monies with the fraudulent help of a senior bank branch manager who knew there were two separate operating accounts for the same corporate plaintiff (GBA) in the same branch." Pls.' Opp. at 16. Although this suggests plaintiffs' theory may be that the DiNatales participated in the operation or management of the enterprise, the allegations in the Complaint are not sufficient to make this inference.

"When bringing a RICO claim against multiple defendants, the plaintiff must allege that each defendant committed two or more predicate acts." *Atkins*, 2008 WL 1926684, at *10 (citing *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001)).

"A complaint alleging mail and wire fraud must show (1) the existence of a scheme to defraud, (2) defendant's knowing and intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme." *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996) (citation omitted); *see also United States v. Zichettello*, 208 F.3d 72, 105 (2d Cir. 2000) (wire fraud); *McLaughlin v. Anderson*, 962 F.2d 187, 190-91 (2d Cir. 1992) (mail fraud). The offense is complete upon the mailing or wire transmission, and each such mailing or transmission is a separate offense. *United States v. Eskow*, 422 F.2d 1060, 1064 (2d Cir. 1970).

"[A]ll allegations of fraudulent predicate acts[] are subject to the heightened [fraud] pleading requirement" of Federal Rule of Civil Procedure 9(b). *First Capital Asset Mgmt., Inc.*, 385 F.3d at 178; *see also Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999) ("[i]n the RICO context, Rule 9(b) calls for the complaint to "specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and

where the statements were made, and identify those responsible for the statements") (citation omitted); *Spool v. World Child Intern. Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008) ("Allegations of predicate mail and wire fraud acts 'should state the contents of the communications, who was involved, [and] where and when they took place, and [should] explain why they were fraudulent'") (alterations in original) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993)); *Atkins v. Apollo Real Estate Advisors*, 2008 WL 1926684, at *11 (E.D.N.Y. Apr. 30, 2008). The plaintiffs must also "identify the purpose of the mailing within the defendant's fraudulent scheme" and "allege facts that give rise to a strong inference of fraudulent intent." *Moore*, 189 F.3d at 173 (citations omitted). Furthermore, in cases involving multiple defendants, Rule 9(b) requires that the pleading identify the nature of each defendant's participation in the alleged fraud. *Atkins*, 2008 WL 1926684, at *10 (citing *DiVittorio v. Equidyne Extractive Industries*, 822 F.2d 1242, 1247 (2d Cir. 1987); *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986)).

Plaintiffs allege "defendants acting in concert with one another wired fraudulent instructions to Canada Bread authorizing Canada Bread to wire monies" into the second operating account.

Compl. ¶ 2.[14]  They also allege that defendants "by falsely

representing in fraudulent correspondence..." fraudulently

induced Canada Bread to submit payments to the second operating

account.  Compl. ¶ 4.  Plaintiffs' allegations do not specify

which of the defendants participated in the alleged predicate

acts of mail or wire fraud, much less where and when they took

place.[15]  Indeed, it is not clear how many communications

plaintiffs allege occurred.  Plaintiffs mischaracterize their

Complaint when they contend, as they do in their opposition, that

they made "numerous specific allegations concerning defendants'

fraudulent conduct and then describe[d] specific example of how

defendants committed such conduct using the mails and wires."

Pls.' Opp. at 6.

Plaintiffs cite *Spitzer v. Adelhak*, 1999 WL 1204352, at *6

(E.D.Pa. Dec. 15, 1999) for the proposition that plaintiffs'

failure to plead which individual defendants sent the alleged

communications at issue is not fatal to their claim because

---

[14] Moreover, to the extent that a fraudulent wire is alleged to be one of the predicate acts, it is impossible to determine whether there is an interstate nexus, as the wire fraud statute requires.  *Cofacredit*, 187 F.3d at 242 ("The wire fraud statute requires that the defendant communicate by wire in 'interstate or foreign commerce' in furtherance of a scheme to defraud") (citing 18 U.S.C. § 1343).

[15] The only allegation of wrongdoing against specific defendants is plaintiffs' allegation that "the Defendant, Fortunando [sic] DiNatale, with the compliance, cooperation and in concert with the Defendants [sic], Priscilla Frey... permitted, authorized, cooperated concealed and/or fraudulently permitted Defendant, Fortunato DiNatale, to open a second operating account.  Compl. ¶3.  This allegation does not constitute a predicate act under 18 U.S.C. § 1961.

plaintiffs have "alleged facts giving rise to a strong inference
of scienter on the part of each defendant." Pls.' Opp. at 6.
*Spitzer*, however, is inapposite.  In that case, plaintiffs did
not allege that the contents of the mailed or wired salary checks
at issue were fraudulent.  In this case, however, plaintiffs'
allege the contents of the communications were fraudulent.
"Where a plaintiff claims that specific mail or wire
transmissions 'were themselves fraudulent, i.e., themselves
contained false or misleading information, the complaint should
specify the fraud involved, identify the parties responsible for
the fraud, and where and when the fraud occurred.'" *Evercrete
Corp. v. H-Cap Ltd.*, 429 F. Supp.2d 612, 624 (S.D.N.Y. 2006)
(quoting *In re Sumitomo Copper Litig.*, 995 F. Supp. 451, 456
(S.D.N.Y. 1998)) (additional citation omitted).  "But where the
plaintiff claims that the mail or wires were simply used in
furtherance of a scheme to defraud, the complaint 'need not be
specific as to each allegation of mail or wire fraud' as long as
'the nature of the RICO scheme is sufficiently pleaded so as to
give notice to the defendants.'" *Id*. (quoting *First Interregional
Advisors Corp. v. Wolff*, 956 F. Supp. 480, 485 (S.D.N.Y. 1997))
(additional citation omitted).

"[I]n complex civil RICO cases involving multiple
defendants, Rule 9(b) does not [] require that the 'temporal or
geographic particulars of each mailing made in furtherance of the

fraudulent scheme be stated with particularity,' but only that the 'plaintiff delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme.'" *Aiu Ins. Co. v. Olmecs Medical Supply, Inc.*, 2005 WL 3710370, at *11 (E.D.N.Y. Feb. 12, 2005)[16] (quoting *In re Sumitomo Copper Litig.*, 995 F. Supp. 451, 456 (S.D.N.Y. 1998)). The allegations in this case, however, do not support a conclusion that the alleged RICO scheme was sufficiently complex to be subject to this standard. *See Aiu Ins.*, 2005 WL 3710370, at *1 (thousands of fraudulent charges and nineteen defendants); *Sterling National Bank v. A-1 Hotels International, Inc.*, 2001 WL 282687, *1 (S.D.N.Y. Mar. 22, 2001) (more than two hundred charges over a two-year period for unauthorized or non-existent reservations).[17]

Accordingly, plaintiffs have failed to allege mail or wire fraud with the requisite particularity of Rule 9(b). They have therefore failed to plead two predicate acts for each defendant.[18][19]

---

[16] Plaintiffs' citation to *AIU Ins. Co.* to support their argument that all defendants foresaw or could have forseen the use of the mails or wires is inapposite because in *AIU*, the plaintiffs were held to this lesser standard. *AIU Ins. Co.*, 2005 WL 3710370, at *11.

[17] Plaintiffs also make an entirely irrelevant argument concerning Federal Rule of Civil Procedure 8(a)'s notice pleading requirements, which does not address the particularity requirement of Rule 9(b). Pls.' Opp. at 15-16.

[18] The HSBC defendants argue that plaintiffs failed to allege reasonable reliance, a requirement under Second Circuit case law. *See Bank of China, N.Y. Branch v. NBM LLC*, 359 F.3d 171, 178 (2d Cir. 2004). I need not

*2. Closed-Ended Continuity*

Even if plaintiffs had sufficiently alleged two predicate acts, the acts of racketeering activity that constitute the pattern must be "related, and [either] amount to or pose a threat of continuing criminal activity." *Cofacrèdit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir.1999) (emphasis omitted) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)) (internal quotation marks omitted). The latter so-called "continuity" requirement can be satisfied either by showing a "closed-ended" pattern – a series of related predicate acts extending over a substantial period of time – or by demonstrating an "open-ended" pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed. *H.J. Inc.*, 492 U.S. at 241, 109 S.Ct. 2893; *DeFalco*, 244 F.3d at 320; *Cofacrèdit*, 187 F.3d at 242; *GICC Capital Corp.*, 67 F.3d at 466. Plaintiffs argue only that they have successfully pleaded a "closed-ended" pattern.

"To satisfy closed-ended continuity, the plaintiff must prove 'a series of related predicates extending over a substantial period of time.'" *Cofacrèdit*, 187 F.3d at 242

address this argument in light of my determinations above.

    [19]  Plaintiffs caution that courts should be sensitive to applying Rule 9(b) too strictly prior to discovery. Plaintiffs' lack of particularity, however, is not the only deficiency in plaintiffs' Complaint and I discuss Rule 9(b) only in the interest of thoroughness.

(quoting *H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. 2893).   The
relevant period "is the time during which RICO predicate activity
occurred, not the time during which the underlying scheme
operated or the underlying dispute took place." *Spool*, 520 F.3d
at 184.   The Second Circuit, since the decision in *H.J. Inc.*, has
never found a period of time less than two years to be a
substantial period of time sufficient to establish closed-ended
continuity.  *Cofacrèdit*, 187 F.3d at 242; *see also Spool*, 520
F.3d at 184.   Although this is not a bright-line rule, "it will
be rare that the conduct persisting for a shorter period of time
establishes close-ended continuity, particularly where, as [in
*Spool*] and as in *GICC Capital Corp.*, [t]he activities alleged
involved only a handful of participants and do not involve a
complex, multi-faceted conspiracy." *Spool*, 520 F.3d at 184
(citations and internal quotation marks omitted); *see also GICC*,
67 F.3d 467-69.

    In *Spool*, the alleged racketeering activity lasted sixteen
months and in *GICC* it lasted eleven months.   The Second Circuit
concluded in both cases the temporal aspect, significantly
greater than the seven month period alleged in this case, was
insufficient to demonstrate close-ended continuity.  *Spool*, 520
F.3d at 184; *GICC*, 67 F.3d at 467-68.[20]  Moreover, defendants'

_____

    [20]  Although the court in *First Interregional Adv. Corp. v. Wolff*, 956
F. Supp. 480, 486 (S.D.N.Y. 1997), concluded that fourteen months satisfied
the temporal requirement, this does not help plaintiff as at most seven months

alleged scheme in this case was hardly complex and involved no more than three individuals. *See id*. Plaintiffs have thus failed to allege close-ended continuity.[21]

Accordingly plaintiffs have failed to allege a pattern of racketeering activity.

**D. Conclusion**

For the reasons set forth above, plaintiffs have failed to state a claim for relief under § 1962(b) and (c) and the First and Second Causes of Action are dismissed against all defendants.

**II. Third Cause of Action**

To plead a RICO conspiracy under § 1962(d), plaintiffs must allege "the existence of an agreement to violate RICO's substantive provisions." *Cofacredit*, 187 F.3d at 244 (2d Cir. 1999) (citation omitted). Plaintiffs therefore must plead facts showing that defendants "agreed to form and associate themselves with a RICO enterprise and that they agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise." *Id*. It is not enough to simply incorporate by reference the allegations of

---

elapsed in the instant case. *Metro. Transp. Auth. v. Contini*, 2005 WL 1565524, at *3-4 (E.D.N.Y. Jul. 6, 2005) is also inapposite as that court concluded plaintiffs had established open-ended continuity.

[21] As noted, plaintiffs do not argue that they established open-ended continuity.

- 21 -

defendants' fraudulent scheme. *Com-Tech Assocs. v. Computer Assocs. Int'l, Inc.*, 753 F. Supp. 1078, 1092, *aff'd* 938 F.2d 1574 (2d Cir. 1991). This, however, is exactly what plaintiffs have done, before concluding, "[a]t various time and places partially enumerated in Plaintiff's complaint and *documentary material*, all Defendants did conspire to conduct and participate in said RICO enterprise through a pattern of racketeering activity..." Compl. ¶ 29 (emphasis in original). Plaintiffs have failed to plead a RICO conspiracy under § 1962(d).

In all events, a conspiracy under § 1962(d) alleging violations of the substantive provisions of the statute, § 1962(a)-(c), must fail if the substantive claims based on § 1962(a)-(c) fail. *Crab House of Douglaston v. Newsday, Inc.*, 418 F. Supp.2d 193, 212 (E.D.N.Y. 2006); *Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*, 354 F. Supp.2d 293, 300 (S.D.N.Y. 2004) ("'[A] RICO conspiracy claim cannot stand where, as here, the elements of the substantive RICO provisions are not met'") (quoting *Citadel Mgmt., Inc. v. Telesis Trust, Inc.*, 123 F. Supp.2d 133, 156 (S.D.N.Y. 2000)). Since I concluded that plaintiffs have failed to state a claim under § 1962(b) and (c), and that they have not asserted a claim under § 1962(a), plaintiffs have not stated a claim for conspiracy under § 1962(d).

The Third Cause of Action is dismissed against all

defendants.

### III. HSBC's Vicarious Liability Under RICO

Courts within the Second Circuit generally do not impose vicarious liability under RICO unless the corporate defendant is a "central figure" in the RICO scheme. *Qatar Nat. Navigation & Transp. Co., Ltd. v. Citibank, N.A.*, 1992 WL 276565, at *7 (S.D.N.Y. Sept. 29, 1992) (citing cases) *aff'd* 182 F.3d 901 (2d Cir. 1999). This is so, because "vicarious liability has been held to be at odds with Congressional intent in enacting RICO since the statute was designed to protect corporations from criminal infiltration rather than hold them liable." *Id.* (citations omitted). A corporation is a "central figure" for purposes of vicarious RICO liability if one of its officers or directors either had knowledge of, or was recklessly indifferent to, the alleged unlawful activity. *Kovian v. Fulton County Nat. Bank and Trust Co.*, 100 F. Supp.2d 129, 133 (N.D.N.Y. 2000) (citations omitted). "If knowledge or reckless indifference at this high corporate level has been demonstrated, then a court may consider other factors, such as the number of high-level employees involved in the racketeering activity, their degree of participation in the racketeering activity, whether these high-level employees themselves committed the alleged predicate acts, and whether the corporation directly and substantially

benefitted from the racketeering activity." *Id.*

Plaintiffs' allegations lack any indication that one of HSBC's officers or directors had any indication of Frey's alleged activity or that HSBC benefitted from the activity; indeed, Frey's activity led to the threat of civil liability to HSBC. Courts within this circuit have been seemingly unanimous in holding that a defendant bank will not be held vicariously liable under RICO where, as here, a bank official or employee allegedly facilitated a fraud by third parties. *See Renner v. Chase Manhattan Bank*, 1999 WL 47239, at *10-11 (S.D.N.Y. Feb. 3, 1999); *Schmidt v. Fleet Bank*, 1998 WL 47827, at *12 (S.D.N.Y. Feb. 4, 1998); *Qatar Nat. Navigation & Transp. Co., Ltd. v. Citibank, N.A.*, 1992 WL 276565, at *7-9 (S.D.N.Y. Sept. 29, 1992); *Kahn v. Chase Manhattan Bank, N.A.*, 760 F. Supp. 369, 327-73 (S.D.N.Y. 1991); *Metro Furniture Rental, Inc. v. Alessi*, 770 F. Supp. 198, 201-02 (S.D.N.Y. 1991); *Kovian*, 100 F. Supp.2d at 133-34. Accordingly, plaintiffs have failed to state a RICO claim, based on the theory of *respondeat superior*, against HSBC.[22]

---

[22] At the time of the filing of defendants' motions, the version of the Complaint on ECF was missing page 17. This Court confirmed with the Clerk's Office that this was not a scanning error and that the original version of the Complaint filed with the Court lacked this page. In an apparent effort to cover all its bases and address any claims asserted on the missing page of the Complaint, HSBC defendants argue that plaintiffs have failed to state a claim for common law fraud. Although it is unclear what information the missing page contained, I address only those claims raised and not those that plaintiffs may have intended, but failed, to raise.

## IV.  **Leave to Replead**

Defendants argue that I should not grant plaintiffs' motion
for leave to replead their complaint, since it would be futile.
I note initially that plaintiffs do not so much move for leave as
assert that they will replead, pursuant to Federal Rule of Civil
Procedure 15(a)(1), which provides that "[a] party may amend its
pleadings once as a matter of course: (a) before being served
with a responsive pleading." *See* Pls.' Opp. at 18.  No
responsive pleadings have been served by either set of
defendants. *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d
229, 242 (2d Cir. 2007) ("Defendants' motion to dismiss, because
it was a motion, not a pleading, was not a 'responsive pleading'
within the meaning of Rule 15(a)") (citing *Barbara v. New York
Stock Exch., Inc.*, 99 F.3d 49, 56 (2d Cir. 1996)).

Defendants cite two cases in which the Second Circuit
affirmed denial of leave to amend following the dismissal of RICO
claims although there had been no prior amendments to the
complaints and no responsive pleadings had been served.[23]  In the
first, *Hollander v. Flash Dancers Topless Club*, 173 Fed. Appx.
15, 2006 WL 267148, at *19 (2d Cir. Feb. 3, 2006), the Court
concluded that it was not abuse of discretion for the district
court to deny leave to amend.  Plaintiff in *Hollander* had filed a

---

[23]  Defendants also cite a third case, *Propst v. Ass'n of Flight
Attendants*, 546 F. Supp.2d 14, 26 (E.D.N.Y. 2008), but that case is inapposite
as an amended complaint had already been filed.

supplemental complaint prior to the district court's ruling that
set forth in detail plaintiff's findings, which the court found
showed that plaintiff had "put forward his best case for relief."
*Hollander v. Flash Dance Topless Club*, 340 F. Supp.2d 453, 463
(S.D.N.Y. 2004). In *Bozeman v. Rochester Tel. Corp.*, 205 F.3d
1321 (Table), 2000 WL 227500, *1 (2d Cir. Jan. 19, 2000), the
Second Circuit concluded that the district court did not abuse
its discretion in denying plaintiff leave to amend because the
complaint and plaintiff's RICO Case Statement, submitted at the
direction of the district court pursuant to a standing order,
demonstrated only "billing disputes between plaintiffs and
defendants, but no basis for claims under RICO." *Id*.

Although plaintiffs' complaint can hardly be said to have
put forward the best case for relief, one is hard pressed to
imagine how the deficiencies in the complaint could be cured by
repleading. Plaintiffs' claims would properly sound in fraud,
which, in the absence of diversity, must be brought in state
court. Furthermore, plaintiffs have sought at least five
consecutive adjournments of the argument on this matter.[24] Oral
argument was originally set for June 25, 2008. Defendants have
remained in limbo for eight months regarding a clearly deficient
case. Leave to amend is, accordingly, denied.

---

[24]The argument has been adjourned nine times. Letters submitted to the
Court regarding the earlier adjournments do not make clear which party sought
the adjournment.

**CONCLUSION**

For the reasons set forth above, plaintiffs' complaint is dismissed with prejudice.  The Clerk is directed to transmit a copy of the within to all parties and the assigned Magistrate Judge.


SO ORDERED.

Dated :   Brooklyn, New York
          February 26, 2009

                    By: /s/ Charles P. Sifton (electronically signed)
                            United States District Judge